UNITED STATES of America, Appellee,

v.

ONE ROCKWELL INTERNATIONAL COMMANDER 690C/840, SERIAL NUMBER 11627, Claimant, ESM Aviation, Appellant.

No. 84–1938.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1984.

Decided Feb. 8, 1985.

Rehearing Denied April 9, 1985.

Rodney S. Webb, U.S. Atty., District of North Dakota, Fargo, N.D., Victor D. Stone, U.S. Dept. of Justice, Washington, D.C., for appellee.

Nicholas J. Spaeth, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., Peter W. Homer, Carol W. Soret, Alan H. Fein, Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A., Miami, Fla., for claimant/appellant, ESM Aviation, Inc.

Before HEANEY, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

ESM Aviation, Inc. (ESM) appeals from the judgment of the district court which forfeits, under 21 U.S.C. § 881 and 49 U.S.C. § 782, ESM's right, title, and interest to a company jet that was used, albeit unwittingly, to transport illegal drugs from Fort Lauderdale, Florida, to Fargo, North Dakota. We reverse.

The aircraft in question is a Rockwell International Commander 690C/840. ESM purchased the aircraft in 1980 and in November of 1981, leased the aircraft to Cav-Air, a fixed base air charter service headquartered in Fort Lauderdale, Florida.

In December of 1981, James DeSalvo, Cav-Air's charter manager, was contacted by an individual who identified himself as Buddy Tyler concerning the possibility of chartering one of Cav-Air's aircraft. A charter flight involving the ESM aircraft was arranged and on December 19, 1981, Tyler and two other passengers were flown from the Cav-Air facility in Fort Lauderdale to Nashville, Tennessee. The following day, the aircraft continued from Nashville to Fargo, North Dakota. Upon its arrival in Fargo, the three passengers left the airport and were subsequently arrested for attempting to sell cocaine to federal undercover agents. The ESM aircraft was searched by federal authorities and, although no cocaine was found, the aircraft was seized by the government.

On May 10, 1982, the government began formal forfeiture proceedings against the aircraft. These proceedings were brought under 21 U.S.C. § 881(a)(4) and 49 U.S.C. § 782, which generally provide for the forfeiture of aircraft used in the transportation of illegal drugs. On August 1, 1983, ESM filed a motion seeking summary judgment against the government. In its motion, ESM claimed that the plane in question was exempt from forfeiture because it was being used as a common carrier at the time it was seized and because neither ESM, DeSalvo, Cav-Air, nor the plane's pilot was privy to or had consented to the transportation or sale of illegal drugs. See 21 U.S.C. § 881(a)(4)(A) and 49 U.S.C. § 782. ESM further claimed that because it, as the owner of the plane, had done all that was reasonably possible to prevent the aircraft from being used illegally, the aircraft was not subject to forfeiture regardless of the common carrier and privity/consent issues. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974).

On September 7, 1983, the trial court entered a partial summary judgment in favor of ESM on the common carrier issue. The court, however, did not enter summary judgment on either the privity/consent is-

sue or the wholly innocent owner issue. A jury trial was subsequently held on these issues, and on February 24, 1984, the jury by special interrogatory found that the government had failed to prove by a preponderance of the evidence that ESM or anyone else had consented to or was privy to the drug transaction. On February 27, 1984, the district court entered judgment based upon the jury's verdict and directed that the aircraft be returned to ESM.

On March 8, 1984, the government filed a motion for reconsideration under Fed.R. Civ.P. 59(e). In this motion, the government asked the court to reconsider its grant of partial summary judgment in favor of ESM on the common carrier issue. On June 29, 1984, the district court reversed its previous position and found as a matter of law that the plane involved was not a common carrier. The court also held as a matter of law that ESM was not a wholly innocent owner and directed a verdict in favor of the government on that issue. Having decided the decisive issues against ESM, the court vacated the jury's verdict, entered judgment in favor of the government, and ordered the forfeiture of the ESM aircraft.

On appeal, ESM raises a variety of procedural and substantive issues. However, because we conclude that the aircraft in question was being used as a common carrier at the time it was seized and because this conclusion is dispositive, we do not address any other issue advanced by ESM.

In its initial summary judgment order, the district court correctly defined a common carrier as a carrier that "holds itself out to the public as willing to carry all passengers for hire indiscriminately." *United States v. One Rockwell International Commander 690C/840*, No. A3–82–66, slip op. at 6 (D.N.D. Sept. 7, 1983) (quoting *Arrow Aviation, Inc. v. Moore*, 266 F.2d 488, 490 (8th Cir.1959)). The evidence before the court established such a "holding out" as a matter of law. First, the ESM aircraft was one of approximately ten aircraft regularly made available to the public by Cav-Air. Second, Cav-Air used a variety of signs, brochures, and business cards to advertise its availability as an air carrier. Finally, with respect to the specific flight in question, the court found that the ESM aircraft in particular had been held out to the public for hire and that the flight had been arranged for and had taken place within the ordinary course of Cav-Air's charter business. Since there had been a "holding out" of the ESM aircraft for hire, the district court concluded that the flight had been conducted as a common carrier. We agree with this conclusion.

On reconsideration, the district court reversed its position. In so doing, the court focused on the lease agreement and concluded that the aircraft had not actually been leased to Cav-Air but instead had been leased to Jimmy Jet International (Jimmy Jet), a corporation solely owned and operated by James DeSalvo, Cav-Air's air charter manager. Unlike Cav-Air, Jimmy Jet was not a certified air carrier and had failed to comply with a variety of Federal Aviation Administration regulations. The court concluded that given these facts, a mere "holding out" was insufficient to create common carrier status. Rather, in addition to a "holding out," the district court concluded that the carrier must comply with all laws and regulations governing the air industry. Here, although the district court concluded that "there was a holding out to the public [by Jimmy Jet] of a willingness to carry all passengers for hire indiscriminately," *United States v. One Rockwell International Commander 690C/840*, 594 F.Supp. 133, 137 (D.N.D. 1984), the court ruled that because it was uncertified and because it was in violation of a number of regulations, Jimmy Jet could not, as a matter of law, be considered a common carrier within the scope of 21 U.S.C. § 881(a)(4) and 49 U.S.C. § 782.

We reject the district court's position. Initially, we believe the evidence clearly shows that the lease arrangement was not between ESM and Jimmy Jet but rather was between ESM and Cav-Air. Jimmy Jet was tied directly to Cav-Air through DeSalvo and had no assets of its own. Rather,

Jimmy Jet was set up solely to serve as a money depository from which DeSalvo. paid the expenses and commissions of Cav-Air's charter service. In all other respects, the operation of the air charter service was the responsibility of Cav-Air.

■ However, even if the district court properly determined the nature of the lease arrangement, we conclude that the court's emphasis on certification and compliance with all regulations is misplaced. Compliance with regulations and evidence of certification are properly factors that can be considered in determining whether a "holding out" has occurred. These considerations, however, are only two of many factors that may be relevant in a particular case. *See United States v. One (1) Liberian Refrigerator Vessel,* 447 F.Supp. 1053, 1064 (M.D.Fla.1977), *aff'd,* 617 F.2d 136 (5th Cir.1980). Here, despite these violations, it is clear (and the district court so found) that Jimmy Jet met the test of common carriage by actually engaging in the business of carrying passengers for hire. *See Arrow Aviation, Inc.,* 266 F.2d at 490. Very simply, at the core of the common carriage issue is not the "corporate character or declared purposes" of the carrier in question but rather what the carrier in reality actually does. *United States v. California,* 297 U.S. 175, 181, 56 S.Ct. 421, 422, 80 L.Ed. 567 (1936). We conclude that whether Jimmy Jet or Cav-Air was involved in the lease agreement, a holding out occurred.

Since we conclude as a matter of law that the flight in question was conducted as a common carrier, the only issue remaining is whether the plane will nevertheless be forfeit because ESM or some other person or entity was privy to or consented to the transportation of illegal drugs. The jury found that there was no privity or consent. The government has not challenged this finding. Consequently, because the flight was conducted as a common carrier and because there was no privity or consent, the plane is exempt from forfeiture under 21 U.S.C. § 881(a)(4)(A) and 49 U.S.C. § 782.

Reversed.