# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-2140

_____

Iowa Telecommunications Services,   *
Inc., doing business as Iowa Telecom,   *
  *
    Plaintiff/Appellant,   *
  *
Citizens Mutual Telephone Cooperative; *
Clear Lake Independent Telephone   *
Company; Farmers Mutual Cooperative *
Telephone Co. of Shelby; Farmers   *
Telephone Company; Grand River   *   Appeal from the United States
Mutual Telephone Corporation; Heart   *   District Court for the
of Iowa Communications Cooperative;   *   Southern District of Iowa.
Huxley Communications; Kalona   *
Cooperative Telephone; Lost Nation-   *
Elwood Telephone Company; Mabel   *
Cooperative Telephone Company;   *
Minburn Telecommunications, Inc.;   *
North English Cooperative Telephone   *
Company; Sharon Telephone; Shell   *
Rock Telephone Company, doing   *
business as Bevcomm c/o Blue Earth   *
Valley Telephone Company; South   *
Central Communications, Inc.; South   *
Slope Cooperative Telephone Company; *
Sully Telephone Association; Titonka   *
Telephone Company; Ventura   *
Telephone Company, Inc.; Webster   *
Calhoun Cooperative Telephone   *
Association; Wellman Cooperative   *
Telephone Association; West Liberty   *
Telephone Company, doing business as   *
Liberty Communications; Winnebago   *

Cooperative Telephone Association;      *
Rockwell Cooperative Telephone          *
Association,                             *
                                         *
            Plaintiffs,                  *
                                         *
      v.                                 *
                                         *
Iowa Utilities Board, Utilities Division, *
Department of Commerce; John Norris,    *
In his official capacity as a member of *
the Iowa Utilities Board and not as an  *
Individual; Diane Munns, In her Official *
Capacity as a member of the Iowa        *
Utilities Board and not as an Individual; *
Curtis Stamp, In his Official Capacity as *
a member of the Iowa Utilities Board    *
and not as an Individual; Sprint        *
Communications LP, doing business as    *
Sprint Communications Company, L.P.,    *
                                         *
            Defendants/Appellees.        *

_____

Submitted: December 12, 2008
Filed: April 28, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Iowa Telecommunications Services, Inc. (Iowa Telecom) appeals from the district court's[1] order affirming the Iowa Utilities Board's ruling that Sprint Communications LP (Sprint) is a telecommunications carrier under the Telecommunications Act of 1996 (Act) and thus entitled to interconnect with the local exchange carriers' networks. We affirm.

## I. Background

The issue on appeal is whether Sprint is a telecommunications carrier under the Act, and we limit our background discussion accordingly. We borrow heavily from the district court's thorough presentation of the statutory, factual, and procedural background. See Iowa Telecomm. Servs., Inc. v. Iowa Utils. Bd., 545 F. Supp. 2d 869 (S.D. Iowa 2008).

### A. Statutory Background

The Telecommunications Act of 1996 was enacted to promote competition, reduce regulation, and encourage the development of new technologies within the telecommunications industry. Before the Act was passed, incumbent local exchange carriers[2] served as the exclusive providers of local telephone service, which was considered a natural monopoly. To facilitate the market entry of competitors, the Act imposed certain duties upon the incumbent carriers, including the duty to provide interconnection with their networks to any requesting telecommunications carrier. 47 U.S.C. § 251(c)(2); see also id. § 251(b)(1)-(6) (obligations of all local exchange

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

[2]"Incumbent" means that the local exchange carrier "was a telephone company in possession of its area at the time that the Act opened up local service to competition." Alma Comm. Co. v. Mo. Pub. Serv. Comm'n, 490 F.3d 619, 620 (8th Cir. 2007).

carriers); id. § 251(c)(1)-(6) (additional obligations of incumbent local exchange carriers). The Act also provided the procedures for negotiation, arbitration, and approval of interconnection agreements between the telecommunications carrier and the incumbent local exchange carrier. Id. § 252.

Interconnection allows multiple carriers to exchange telephone traffic. Without it, a new-to-the-market carrier "would not be able to connect its customers to a customer served by the ILEC [incumbent local exchange carrier] without building its own infrastructure to serve both customers." Iowa Network Servs., Inc.v. Qwest Corp., 363 F.3d 683, 686 (8th Cir. 2004). Only telecommunications carriers have the right to compel interconnection with a local exchange carrier. 47 U.S.C. § 251 (c)(2). The Act defines "telecommunications carrier" as "any provider of telecommunications services," and defines "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or such classes of users as to be effectively available directly to the public, regardless of the facilities used." Id. § 153 (44), (46).

The Federal Communications Commission (FCC) has held that the term "telecommunications carrier" has essentially the same meaning as the term "common carrier" under the Communications Act of 1934. AT&T Submarine Sys., Inc., 13 F.C.C.R. 21585, 21587-88 ¶ 6 (1998); Cable & Wireless, PLC, 12 F.C.C.R. 8516, 8522 ¶ 13 (1997); see also V.I. Tel. Corp. v. F.C.C., 198 F.3d 921, 925 (D.C. Cir. 1999). The Communications Act defines "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire" and imposed upon local telephone companies certain common carrier obligations.[3] 47 U.S.C. § 153 (10); Time Warner Telecom, Inc. v. F.C.C., 507 F.3d 205, 210 (3d Cir.

---

[3]The common carrier doctrine arose from common law rules which historically "impose[d] a greater standard of care upon carriers who held themselves out as offering to serve the public in general." Nat'l Ass'n of Regulatory Util. Comm'rs v. F.C.C., 525 F.2d 630, 640 (D.C. Cir. 1976) (NARUC I).

2007). "The primary *sine qua non* of common carrier status is a quasi-public character, which arises out of the undertaking to carry for all people indifferently." Nat'l Ass'n of Regulatory Util. Comm'rs v. F.C.C., 533 F.2d 601, 608 (D.C. Cir. 1976) (NARUC II) (internal quotations omitted).

A two-prong test has emerged to determine whether a carrier is a common carrier under the Communications Act: "(1) whether the carrier holds himself out to serve indifferently all potential users; and (2) whether the carrier allows customers to transmit intelligence of their own design and choosing." United States Telecom Ass'n v. F.C.C., 295 F.3d 1326, 1329 (D.C. Cir. 2002) (internal quotations omitted); see also Sw. Bell Tel. Co. v. F.C.C., 19 F.3d 1475, 1481 (D.C. Cir. 1994); NARUC II, 533 F.2d at 608-09; NARUC I, 525 F.2d at 641-42. The key factor in determining common carriage is whether the carrier offers "indiscriminate services to whatever public its service may legally and practically be of use." United States Telecom Ass'n, 295 F.3d at 1334 (quoting NARUC I, 525 F.2d at 642). Iowa Telecom concedes on appeal that Sprint meets the second prong of the test and that Sprint holds itself out to serve all potential users. It contends, however, that Sprint does not or will not serve those users indifferently or indiscriminately because its contracts are confidential and individually negotiated and its rates are not public.

## B. Sprint's Business Model

Sprint has developed a business model in which it partners with local cable companies to provide local telephone services. Sprint provides the facility to interconnect calls to and from other carriers, the switch that gathers and distributes the telephone traffic, and various back-office functions. The local cable company provides the system of wires and cables which takes a phone call from the user's premises to the connection point. This system is known as "last-mile" or "loop" services, and it carries calls to and from the switch and the end user.

In Iowa, Sprint has partnered with MCC Telephony of Iowa, L.L.C. (MCC), the local cable company and an affiliate of Mediacom. Under their arrangement, Sprint provides the wholesale telecommunications services described above, which MCC retails. MCC provides last-mile facilities and is in charge of all sales, billing, and customer service. Sprint has no direct relationship with the customers and does not provide any retail services. Sprint believes this model is advantageous to both companies, allowing them to enter the market quickly, efficiently, and without duplicating resources. The terms, conditions, and prices of Sprint's contract with MCC are considered confidential, and its rates are not available to the public.

## C. Procedural Background

In October 2004, Sprint sent a request for interconnection to various local exchange carriers in Iowa, including Iowa Telecom.[4] Sprint sought an interconnection agreement to use for its business with MCC, as well as for potential business with other similarly situated cable providers. Iowa Telecom refused to execute an interconnection agreement directly with Sprint because it believed that Sprint was not the proper party to the agreement. Instead, Iowa Telecom indicated its willingness to negotiate with MCC or with Sprint acting as MCC's agent. Sprint made clear that it was not acting as MCC's agent or legal partner; it sought interconnection in its own right, albeit in connection with its relationship with MCC.

Sprint filed a petition for arbitration with the Iowa Utilities Board (Board) in March 2005. See 47 U.S.C. § 252(b)(1). Iowa Telecom moved to dismiss, arguing that Sprint did not meet the Act's definition of "telecommunications carrier." The Board agreed and dismissed the petition because Sprint "[was] not, in this context, holding itself out as a common carrier." Sprint Comm. Co., L.P. v. Ace Comm.

---

[4]Several rural local exchange carriers were party to the action below, but only Iowa Telecom appeals from the district court's judgment.

Group, et al., Docket No. ARB-05-2, at 12, Order Granting Motions To Dismiss, 2005 WL 1415230 (Iowa Utils. Bd. May 26, 2005). Sprint had not asserted that it would make its proposed services available on a common carrier basis, and the Board determined that Sprint did not intend to offer its proposed services "to any party other than its private business partners, pursuant to individually-negotiated contracts." Id. at 13. Without status as a telecommunications carrier, Sprint was not entitled to interconnect with the local exchange carriers' networks.

Sprint appealed the Board's decision to the district court. During the course of those proceedings, it became apparent that there were unresolved evidentiary and legal issues relevant to the Board's order of dismissal. Accordingly, Sprint and the Board sought a limited stay of proceedings and a remand to the Board for further consideration, which the district court granted.

Following a hearing, the Board rescinded its order of dismissal and issued its order on rehearing, holding that Sprint met the definition of "telecommunications carrier" under the Act because it "indiscriminately offer[ed] its services to a class of users so as to be effectively available to the public." Sprint Comm. Co., L.P. v. Ace Comm. Group, et al., Docket No. ARB-05-2, at 14, Order on Rehearing, 2005 WL 3624405 (Iowa Utils. Bd. Nov. 28, 2005). The Board defined the class of users as "entities capable of offering their own last-mile facilities." Id. The Board also found it immaterial that Sprint tailored its contracts to each individual customer. In addressing the local exchange carriers' concern that Sprint's business model might result in a denial of their rights or some unidentified advantage, the Board noted that it would "not reject Sprint's preferred business model on the basis of unspecified concerns, but the Board emphasize[d] that if any anti-competitive problems develop as a result of this approach, the RLECs [rural local exchange carriers] may file an appropriate complaint with the Board." Id. at 17. As a telecommunications carrier, Sprint was then able to demand interconnection negotiations and compel arbitration of any open issues.

-7-

After the order on rehearing was filed with the district court, general jurisdiction was returned to the Board. The Board later issued its arbitration order and approved the parties' interconnection agreements.

Iowa Telecom filed suit in district court in June 2006, seeking declaratory and injunctive relief and raising many of the same arguments it had raised before the Board. Iowa Telecom alleged, among other things, that the Board's order on rehearing violated federal law because Sprint did not meet the definition of "telecommunications carrier" and was not engaged in providing "telecommunications services." Affirming the Board's order, the district court concluded that Sprint qualified as a telecommunications carrier because "Sprint offers service indiscriminately to MCC and other cable companies with last-mile capabilities." Iowa Telecomm. Servs., Inc., 545 F. Supp. 2d at 878. The district court also found that individually negotiated, confidential contracts did not violate the Act.

Iowa Telecom appeals, contending that Sprint does not hold itself out indifferently to all potential users because its contracts are confidential and individually negotiated and its rates are not publicly available. Accordingly, the argument goes, Sprint is not a telecommunications carrier and not entitled to interconnection with Iowa Telecom's network.

## II. Analysis

We apply the same standard of review to the Board's decision as did the district court. WWC License, L.L.C. v. Boyle, 459 F.3d 880, 889 (8th Cir. 2006). We review the Board's interpretation and application of federal law *de novo* and will set aside its findings of fact only if they are arbitrary and capricious. Sw. Bell Tel., L.P. v. Mo. Publ. Serv. Comm'n., 530 F.3d 676, 682 (8th Cir. 2008); WWC License, L.L.C., 459 F.3d at 889. We owe deference to the FCC's interpretation of the Act because the

FCC is charged with the duty to promulgate regulations to interpret and carry out the Act. WWC License, L.L.C., 459 F.3d at 890.

The question, then, is whether Sprint must make publicly available its contracts and rates for it to "hold itself out to serve indifferently all potential users." United States Telecom Ass'n, 295 F.3d at 1332 (internal quotations omitted); see also NARUC I, 525 F.2d at 640-42. Iowa Telecom has directed us to no case that holds that a carrier must publicize its rates and contracts in order to be deemed a telecommunications carrier, and thus a common carrier. We do not read the Telecommunications Act and related case law to be so restrictive. As a matter of law, a carrier's confidential contracts and rates do not automatically result in the carrier being classified as a private or non-common carrier. See Sw. Bell Tel. Co., 19 F.3d at 1481 (recognizing that "a carrier cannot vitiate its common carrier status merely by entering into private contractual relationships with its customers").

Having found no error of law, we turn to the question whether the Board's finding of common carriage was arbitrary and capricious. The key factor in finding common carriage is the offering of "indiscriminate service to whatever public [the carrier's] service may legally and practically be of use." NARUC I, 525 F.2d at 642. In reviewing the Board's decision, we find instructive Verizon California, Inc. v. F.C.C., 555 F.3d 270, 275-76 (D.C. Cir. 2009).

In Verizon California, Inc., the District of Columbia Circuit upheld the FCC's finding of common carriage in light of the fact that: (1) the carriers self-certified that they operated as common carriers, (2) the carriers gave public notice of their intent to act as common carriers, and (3) the carriers entered into publicly available interconnection agreements with the local exchange carrier. Id. at 275. The FCC gave significant weight to the carriers' self-certification "because being deemed a 'common carrier' (*i.e.*, being deemed to be providing 'telecommunication services') confers substantial responsibilities as well as privilege." Bright House Networks, LLC v.

Verizon Cal., Inc., 23 F.C.C.R. 10704, 10718 ¶ 39. The District of Columbia Circuit concluded that "[w]hile none of the three facts by itself seems compelling, in the aggregate they appear enough to render the Commission's conclusion reasonable." Verizon Cal., Inc., 555 F.3d at 275.

The record in this case supports the Board's finding of common carriage because it reflects that Sprint has self-certified that it is a common carrier, that Sprint is making public its intent to act as a common carrier, and that Sprint has entered into a public interconnection agreement. First, Sprint is holding itself out to be a common carrier, willing to provide wholesale services to any last-mile retail service provider in Iowa. James Burt, Director of Regulatory Policy for Sprint, testified repeatedly that Sprint will offer its services to any last-mile provider similarly situated to MCC: "Sprint intends to provide the interconnection services to all entities who desire to take them and who have comparable 'last mile' facilities to the cable companies." Moreover, Sprint markets its telecommunications services to cable companies with last-mile facilities, giving notice to the relevant public of its intent to provide services. Burt described Sprint's marketing efforts, including a marketing brochure that introduces cable companies (or other similarly situated providers) to the breadth of services that Sprint can provide. Burt also testified that Sprint sends company representatives to trade shows to "convey to as many cable companies as possible that Sprint [is] interested in forming relationships to provide competitive voice services." Finally, Sprint entered into a publicly available interconnection agreement with Iowa Telecom.[5]

---

[5]This fact is arguably less compelling here than it was in Verizon California, Inc. There, the incumbent local exchange carrier had entered into a publicly available interconnection agreement before challenging the carrier's status as a common carrier and its right to interconnect. Verizon Cal., Inc., 555 F.3d at 275. Here, Iowa Telecom did not enter into an interconnection agreement with Sprint until ordered to do so.

Iowa Telecom has directed us to several cases in which individually negotiated, private contracts have supported a finding of non-common, or private, carriage. E.g. V.I. Tel. Corp. v. F.C.C., 198 F.3d at 925; Sw. Bell Tel. Co. v. F.C.C., 19 F.3d at 1481; NARUC I, 525 F.2d at 643; Norlight, 2 F.C.C.R. 5167, 5168 ¶ 12 (1993). In each of those cases, however, the carrier was trying to maintain its private status over objections from its opponents. As evidence of private carriage, the courts and the FCC found persuasive that the carriers entered into individually negotiated, customer-specific contracts with limited, long-term clientele. With private or non-common status, the carriers were thus entitled to choose their clients on an individual basis, were not compelled to serve indifferently all potential users, and were able to avoid common carrier regulation.

Unlike the cases Iowa Telecom cites, Sprint seeks common carrier status by holding itself out to be a common carrier and representing that it will serve all potential users. Its individually negotiated, private contracts do not outweigh the evidence of common carriage recited above. There is no evidence in the record that Sprint discriminates or will discriminate in providing telecommunication services. Instead, Iowa Telecom has asked us to assume that Sprint does not offer its services indiscriminately because the terms and rates of Sprint's contract with MCC are individually negotiated and confidential.[6] We recognize that Sprint's contracts with last-mile providers will vary depending on the services the last-mile provider chooses and that the terms and rates included in those contracts will be confidential. Those facts alone, however, do not overcome the evidence that Sprint is acting as a common carrier and certainly do not render the Board's decision arbitrary and capricious.

---

[6]We are not troubled by the fact that Sprint currently serves only MCC. If a similarly situated last-mile provider were looking for the wholesale services Sprint provides, Sprint would be an obvious choice. See Verizon Cal., Inc. v. F.C.C., 555 F.3d at 276 (upholding FCC's finding of common carriage even though the carriers served only their affiliates).

## Conclusion

The district court's order is affirmed.

_____