United States Court of Appeals
For the Eighth Circuit
_____

No. 19-1414
_____

Jacob Riegelsberger, individually and on behalf of all similarly situated persons

*Plaintiff - Appellant*

v.

Air Evac EMS, Inc.; Global Medical Response, Inc., formerly known as Air
Medical Group Holdings, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 16, 2020
Filed: August 17, 2020
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Jacob Riegelsberger sued his employer, Air Evac EMS, Inc., under federal
law for unpaid overtime wages. After determining that his job was exempt from

federal overtime requirements, the district court[1] granted summary judgment to Air Evac. We affirm.

## I.

Riegelsberger is a flight paramedic with Air Evac, an "air ambulance" service that provides emergency medical transportation by helicopter. Under company policy, he does not receive overtime pay until he works more than 84 hours over a two-week pay period. He believes that this policy violates the Fair Labor Standards Act ("FLSA"), which requires most employers to pay overtime after an employee works more than 40 hours in a single week. *See* 29 U.S.C. § 207(a)(1). He seeks to recover unpaid overtime wages under FLSA. *See id.* § 216(b).

Before the district court, Air Evac argued that it was a "carrier by air," which would make Riegelsberger's job exempt from FLSA's overtime requirements. *Id.* § 213(b)(3). He had two responses: (1) the company's prior statements "estopped" it from invoking the exemption; and (2) the exemption did not apply anyway. The court rejected the estoppel argument, concluded that the job was exempt, and granted summary judgment to the company.[2]

## II.

We begin with Riegelsberger's equitable-estoppel argument. Equitable estoppel prevents "a party who makes a representation that misleads another person" from denying it if the other person "reasonably relies on [it] to his detriment." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493–94 (8th Cir. 2002) (citation omitted);

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

[2]The district court also dismissed a claim brought against Air Evac's parent company, Global Medical Response, Inc. This particular decision is not before us on appeal.

*see also Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984) (citing Restatement (Second) of Torts § 894(1) (Am. Law Inst. 1979)).  The reason is that "a party [may not] tak[e] inequitable advantage of a situation it caused."  *Immigration Law Grp., LLP v. McKitrick*, 484 F.3d 998, 1001 (8th Cir. 2007).

The parties' disagreement extends beyond just basic equitable-estoppel principles to the underlying standard of review.  The general rule is that equitable decisions, including those involving estoppel, are subject to an abuse-of-discretion standard.  *See Duty*, 293 F.3d at 493.  Riegelsberger would rather have us start from scratch with de-novo review, but his only support comes from a case involving a motion to compel arbitration, *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).  Unlike *Donaldson*, however, this case does not involve a special context like arbitration.  Rather, it is just a run-of-the-mill application of equitable-estoppel principles, so the general rule applies.

A.

Riegelsberger's equitable-estoppel argument arises out of the parties' communications during the months leading up to the lawsuit.  The controversy arose after Air Evac took over an air base from REACH Air Medical Services, one of its sister companies.  As part of the transition, REACH employees had an option to continue doing the same work for Air Evac.  Riegelsberger, who was a REACH employee at the time, took advantage of the offer.

The two companies had similar human-resources policies, but overtime was not one of them.  REACH paid overtime after an employee reached 40 hours of work in a *single* week.  Air Evac, by contrast, required 84 hours over *two* weeks.  In a notice to employees before the transition, Air Evac explained that the 84-hour overtime policy was one of just "a few differences" between the two companies.

Air Evac also sent an offer letter to Riegelsberger. In it, under the heading "Compensation," the letter stated that the job was

> a *non-exempt* position for purposes of Federal Wage and Hour Law, which mean[t] that [he was] eligible for overtime pay for hours actually worked in excess of 84 hours in a pay period.

(Emphasis added.)

## B.

Riegelsberger seizes on a single word, "non-exempt," to argue that equitable estoppel applies. The district court concluded that his reliance on the letter was unreasonable because Air Evac had otherwise clearly and consistently communicated its overtime policy to him.

The district court did not abuse its discretion in reaching this conclusion. It is true, as Riegelsberger argues, that the letter was self-contradictory when it stated that the position was at the same time non-exempt and subject to Air Evac's overtime policy. *See* 29 U.S.C. § 207(a)(1) (requiring overtime once a non-exempt employee works 40 hours in a week). But the letter also encouraged him to direct any specific questions to an Air Evac "Benefits Specialist"—which, as the district court noted, he did not do. His lack of "reasonable diligence" in investigating the inconsistency doomed his equitable-estoppel claim. *Heckler*, 467 U.S. at 59 n.10 (quoting 3 J. Pomeroy, Equity Jurisprudence § 810, at 219 (S. Symons ed. 1941)); *see Reed v. Lear Corp.*, 556 F.3d 674, 680 (8th Cir. 2009) (holding that an employee's reliance was unreasonable when, in the face of conflicting messages, he "could have easily sought clarification from" his employer).

## III.

With the carrier-by-air exemption still on the table, our next task is to determine whether it applies. The district court concluded that it did and granted

summary judgment to the company. We review this decision, as well as the underlying statutory question, de novo. *See Williams v. Cent. Transp. Int'l, Inc.*, 830 F.3d 773, 775 (8th Cir. 2016).

FLSA exempts certain jobs from its overtime requirements, including "employee[s] of a carrier by air subject to the provisions of title II of the Railway Labor Act." 29 U.S.C. § 213(b)(3). The Railway Labor Act, for its part, covers employees of "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C. § 181. Riegelsberger does not dispute that Air Evac transports people by air, that it engages in interstate commerce, or that his job as a flight paramedic is related to its "transportation activities." *Nw. Airlines, Inc. v. Jackson*, 185 F.2d 74, 77 (8th Cir. 1950). The only disputed question is whether Air Evac is a "common carrier." Although we generally look to dictionary definitions in the absence of a statutory definition, *see Thompson Truck & Trailer, Inc. v. United States*, 901 F.3d 951, 953 (8th Cir. 2018), we have given "common carrier" its common-law meaning when it has turned up elsewhere, *see Aho v. Erie Mining Co.*, 466 F.2d 539, 540 (8th Cir. 1972).

As it happens, both lead to the same place. One dictionary from the period defines "common carrier" as "the office of carrying goods or persons for hire and for all persons indifferently." *Webster's New International Dictionary of the English Language* 540 (2d ed. 1934). Likewise, under the common law, a "common carrier" must "hold[] itself out to the public as willing to carry all passengers for hire indiscriminately." *Arrow Aviation, Inc. v. Moore*, 266 F.2d 488, 490 (8th Cir. 1959).

But "all" does not mean "everybody all the time." *Terminal Taxicab Co. v. Kutz*, 241 U.S. 252, 255 (1916). Rather, a carrier is still "common" even if it carves out a specialized niche in the marketplace that serves only "a definable segment of the public." *Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 750 (5th Cir. 2003) (emphasis omitted); *see also Am. Orient Express Ry. Co. v. Surface Transp. Bd.*, 484 F.3d 554, 557 (D.C. Cir. 2007) (holding that a company offering specialized vacations was a common carrier even though it excluded, among others, children);

- 5 -

22 Williston on Contracts § 58:3 (4th ed. 2017) ("Indeed, the service may be a common carriage although restricted to certain classes of persons or things, provided that the classification is reasonable . . . ."). What matters is whether, within the definable segment, it offers its services "indiscriminate[ly]." *Iowa Telecomms. Servs., Inc. v. Iowa Utils. Bd.*, 563 F.3d 743, 746 (8th Cir. 2009) (quoting *U.S. Telecom Ass'n v. FCC*, 295 F.3d 1326, 1334 (D.C. Cir. 2002)); *see also Webster's New International Dictionary*, *supra*, at 540.

Based on this understanding, Air Evac checks all the necessary boxes. First, it is a transportation company that "holds itself out to the public" for hire. *Arrow Aviation, Inc.*, 266 F.2d at 490. One way it does so is by selling "memberships," a form of prepaid protection against some costs. It also markets its services to medical providers and emergency responders, who request rides on behalf of those who need them. Through both channels, Air Evac is willing to provide transportation services for hire to all within its definable segment: people in critical medical condition who require an air evacuation, either from a remote location to a hospital or between two hospitals.

Second, Air Evac does not discriminate within its segment. Nothing suggests, for example, that it arbitrarily makes some medically necessary trips but not others based on a patient's inability to pay or some other factor. *See Am. Orient Express Ry. Co.*, 484 F.3d at 557 (stating that a common carrier may "not 'make individualized decisions, in particular cases, whether and on what terms to deal'" (quoting *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 525 F.2d 630, 641 (D.C. Cir. 1976)). In fact, many states even forbid it from inquiring ahead of time about a patient's ability to pay. *See, e.g.*, Mo. Rev. Stat. § 190.108(2) (2016); Mo. Code Regs. Ann. tit. 19, § 30-40.308(2)(B)(2) (2020). In sum, Air Evac "fall[s] squarely within the definition of [a] common carrier[]." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 764 (4th Cir. 2018).

Riegelsberger's arguments to the contrary do not get off the ground. It makes no difference, for example, that medical providers, rather than the patients

- 6 -

themselves, are the primary points of contact in arranging transportation. Just as a major airline can still be a common carrier if a passenger uses a travel agent to arrange transportation, health-care providers can provide the same service for their patients without affecting Air Evac's common-carrier status. *Cf. Air Evac EMS, Inc.*, 910 F.3d at 764 (making a similar analogy). The fact that intermediaries are involved, in other words, does not change what Air Evac "actually does," which is to transport patients for a fee. *United States v. One Rockwell Int'l Commander 690C/840, Serial No. 11627*, 754 F.2d 284, 287 (8th Cir. 1985).

Nor does it matter that Air Evac does not require patients to pay or agree to pay beforehand. There is no dispute that Air Evac charges for its services. *See, e.g.*, *Thibodeaux*, 328 F.3d at 747, 753 (holding that a company conducted a "transportation-for-hire business" by operating aircraft that were fractionally owned by its passengers and charging an "hourly operating cost plus [a] management fee"); *Citizens' Bank v. Nantucket Steamboat Co.*, 5 F. Cas. 719, 725 (C.C.D. Mass. 1811) (No. 2,730) (Story, J., riding circuit) ("I take it to be exceedingly clear, that no person is a common carrier in the sense of the law, who is not a carrier for hire; that is, who does not receive, or is not entitled to receive, any recompense for his services."). The fact that Air Evac waits until after it has transported a patient to collect its fee does not change the for-hire calculus.

The bottom line is that all signs point toward common-carrier status. *See* 45 U.S.C. § 181. As a "carrier by air," 29 U.S.C. § 213(b)(3), Air Evac did not have to pay Riegelsberger any more than it did.

IV.

We accordingly affirm the judgment of the district court.

_____

- 7 -