**FRONTIER TELEPHONE OF ROCHESTER, INC.,**
Plaintiff

v.

**USA DATANET CORP., Defendant.**

No. 05–CV–6056CJS.

United States District Court,
W.D. New York.

Aug. 2, 2005.

Paul L. Leclair, Esq., Mary Jo S. Korona, Esq., Wolford & Leclair LLP, Rochester, NY, for plaintiff.

Jerauld E. Brydges, Esq., Peter H. Abdella, Esq., Harter, Secrest and Emery, LLP, Rochester, NY, Brad E. Mutschelknaus, Esq., Todd D. Daubert, Esq., Kelley Drye & Warren LLP, Washington, DC, for defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

This is an action in which Frontier Telephone of Rochester, Inc. ("Frontier"), a provider of telephone exchange access service, is suing USA Datanet Corp. ("Datanet"), a provider of voice over internet protocol ("VoIP") voice communication services, to collect interstate originating switched access charges. Now before the Court is Datanet's motion to dismiss the complaint on the grounds of "primary jurisdiction," and alternatively, for failure to state a claim. For the reasons that follow defendant's application is denied. However, the Court will stay this matter pending the issuance of rules by the Federal

Communications Commission ("FCC") that ought to resolve the central issue in this case, which is whether and to what extent VoIP voice communication providers such as Datanet are liable to pay access charges to local exchange carriers ("LECs") such as Frontier that handle the VoIP provider's traffic.

## BACKGROUND

USA Datanet is a provider of VoIP long distance telephone service. VoIP technology converts the contents of a particular communication into digital packets of information, which it then sends over private networks or over the internet to an end user. These separate packets of information run through various computers, routers, and switches anywhere in the world, and are then "reconstituted" at the destination. Information that has been digitized and packetized in this manner may also be "enhanced" in various ways, which the Court will discuss further below.

As the name implies, VoIP communications are sent at least partially over the internet. However, where the call is being made and/or received by someone using ordinary customer premises equipment ("CPE"), that is, a traditional telephone, VoIP traffic must also travel through the "public switched telephone network" ("PSTN"), where it is handled by LECs such as Frontier, who control the so-called "last mile" to the end-user's phone. Here, according to Frontier, "Datanet's network does not extend the so-called "last mile" to an end-user customer's home or business. Instead, [LECs], including plaintiff, own, lease and/or resell extensive local telephone networks that extend the last mile

to reach the end-user customers." Complaint ¶ 12. In short, Frontier and other LECs "provide the connection between local and long-distance networks for USA Datanet." *Id.* at ¶ 15.

In this regard, Frontier provides two types of "switched access service": "originating access service" and "terminating access service."

> 'Originating access service' occurs when a call originates on a LEC's network and is routed to USA Datanet for completion in another locality. 'Terminating access service' occurs when USA Datanet routes a long-distance call over USA Datanet's network to a local network or through a LEC for completion to an end-user customer in the local area served by the plaintiff.

Complaint ¶ 17. Frontier imposes charges for these services at rates set forth in "tariffs" that it has filed with the FCC. In this case, Frontier is seeking to collect originating access charges from Datanet.

Datanet, however, is not directly "interconnected" with Frontier. Rather, in order to provide VoIP telephone service to its customers, Datanet purchases "originating telecommunication services" from a third-party LEC, PaeTec.[1] Datanet is thus directly "interconnected" with Pae Tec, and PaeTec, in turn, is "interconnected" with Frontier. PaeTec is a signatory to an interconnection agreement "ICA" with Frontier, but there is no such agreement between Datanet and Frontier. Nonetheless, Frontier contends that Datanet owes it access charges from 1999

---

1. PaeTec is a Competitive Local Exchange Carrier ("CLEC"), while Frontier is an Incumbent Local Exchange Carrier ("ILEC"). For a brief discussion of the difference between an ILEC and a CLEC, see *Competitive Telecommunications Ass'n v. F.C.C.*, 309 F.3d 8, 10 (D.C.Cir.2002). In short, ILECs are

former Bell Operating Companies, who inherited AT & T's local exchange facilities after the breakup of AT & T. The Act requires ILECs to lease certain network elements to their competitors, the CLECs, who in turn provide services to third parties. *Id.*

onward, in the amount of $679,066.20, plus late fees totaling $251,457.50.

Datanet has moved to dismiss this action, pursuant to the doctrine of "primary jurisdiction." Datanet contends that the parties' dispute should be addressed by the FCC, rather than this Court, since this case involves the issue of "originating switched access charges on VoIP traffic," which is an unsettled area of law that is presently being examined by the FCC. More specifically, Datanet contends that the issues in this case include: 1) whether VoIP providers are required to pay access charges at all; that is, whether the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.*, ("the Act"), allows LECs to impose "originating access charges" on VoIP traffic; and 2) if so, whether Frontier's "tariff schedule" applies to Datanet, since Datanet does not exchange traffic directly with Frontier, but only does so indirectly through Pae Tec. Datanet contends that these very issues are now being considered by the FCC. *See,* Datanet Memo of Law [# 8], p. 23.

In this regard, Datanet cites two matters that are currently pending before the FCC. The first is a "Notice of Proposed Rulemaking" issued by the FCC on March 10, 2004. *In the Matter of IP–Enabled Services,* WC Docket No. 04–36, Notice of Proposed Rulemaking, FCC 04–28, 2004 WL 439260, 19 F.C.C.R. 4863 (F.C.C. March 10, 2004), . The proposed rulemaking involves "issues relating to services and applications making use of Internet Protocol (IP), including but not limited to voice over IP (VoIP) services (collectively, "IP-enabled services")." In the Notice, the FCC states that it is in the process of drafting rules pertaining to VoIP, including rules concerning "economic regulation." Specifically, the Notice asks for comments as to whether VoIP providers should be subject to "access charges." In

a section entitled "Carrier Compensation," the Notice states:

> The Commission seeks comment on the extent to which access charges should apply to VoIP or other IP-enabled services. If providers of these services are not classified as interexchange carriers, or these services are not classified as telecommunications services, should providers nonetheless pay for use of the LEC's switching facilities? As a policy matter, we believe that any service provider that sends traffic to the PSTN should be subject to similar compensation obligations, irrespective of whether the traffic originates on the PSTN, on an IP network, or on a cable network. We maintain that the cost of the PSTN should be borne equitably among those that use it in similar ways. Given this, under what authority could the Commission require payment for these services?

> \* \* \* \* \* \*

> By seeking comment on whether access charges should apply to the various categories of service identified by the commenters, we are not addressing whether charges apply or do not apply under existing law.

> If, on the other hand, VoIP or other IP-enabled services are classified as telecommunications services, should the Commission forbear from applying access charges to these services, or impose access charges different from those paid by non-IP-enabled telecommunications service providers? If so, how should different charges be computed and assessed? If commenters believe charges should be assessed, must carriers pay access charges, or should they instead pay compensation under section 251(b)(5) of the Act? Would assessment of rates lower than access charge rates require increases in universal service support or end-user charges? If no ac-

cess charges, or different charges, are assessed for VoIP and IP-enabled service providers' use of the PSTN, would identification of this traffic result in significant additional incremental costs?

*Id.* at 4904–5, 2004 WL 439260.

The second matter now before the FCC is a petition for a declaratory ruling that was filed on August 20, 2004, entitled, *In the Matter of Petition for Declaratory Ruling that VarTec Telecom, Inc. is Not Required to Pay Access Charges to Southwestern Bell Telephone Company or Other Terminating Local Exchange Carriers When Enhanced Service Providers or Other Carriers Deliver the Calls to Southwestern Bell Telephone Company or Other Local Exchange Carriers for Termination* ("*Vartec*"). This petition was filed by VarTec, a VoIP provider, because an LEC, Southwestern Bell, was threatening to collect "access charges" from VarTec even though VarTec was not a customer of Southwestern Bell, in the sense that it has no contractual relationship with Southwestern Bell. Instead, VarTec contracted with various enhanced service providers, who in turn had contracts with Southwestern Bell.

Alternatively, Datanet contends that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, since there is currently no legal basis for Frontier to impose access charges on Datanet. In that regard, Datanet maintains that Frontier's only plausible theory of recovery is that Datanet "constructively ordered" Frontier's services, and is therefore liable to Frontier based upon Frontier's tariff. However, Datanet contends that, as a matter of law, it has not constructively ordered services from Frontier, because it is directly interconnected with PaeTec, not Frontier. Datanet further contends that it does not in fact receive any services from

Frontier to which Frontier's tariff would apply.

Frontier, on the other hand, maintains that the FCC has already determined that the type of service provided by Datanet is subject to interstate access charges. In this regard, Frontier cites the FCC's decision "*In the Matter of Petition for Declaratory Ruling that AT & T's Phone–To–Phone IP Telephony Services Are Exempt From Access Charges,*" FCC–04–97, 19 F.C.C.R. 7457, 2004 WL 856557 (April 21, 2004). In that decision, the FCC described AT & T's service as follows:

> The service at issue ... consists of an interexchange call that is initiated in the same manner as traditional interexchange calls—by an end user who dials 1+ the called number from a regular telephone. When the call reaches AT & T's network, AT & T converts it from its existing format into an IP format and transports it over AT & T's internet backbone. AT & T then converts the call back from the IP format and delivers it to the called party through local exchange carrier (LEC) local business lines.

*Id.,* 19 F.C.C.R. at 7457. The FCC concluded that AT & T's service was subject to access charges, noting, "We emphasize that our decision is limited to the type of service described by AT & T in this proceeding," namely, that which "1) uses ordinary customer premises equipment (CPE) with no enhanced functionality; 2) originates and terminates on the public switched telephone network (PSTN); and 3) undergoes no net protocol conversion and provides no enhanced functionality to end users due to the provider's use of IP technology." *Id.,* 19 F.C.C.R. at 7457–58. The FCC further stated that, "generally, services that result in a protocol conversion are enhanced services, while services that result in no net protocol conversion to

the end user are basic services." *Id.* at 7459, 2004 WL 856557. As to that, the FCC noted that "the protocol processing that takes place incident to phone-to-phone IP telephony does not affect the service's classification, under the Commission's current approach, because it results in no net protocol conversion to the end user." *Id.* at 7461, 19 F.C.C.R. 7457. The FCC found that AT & T's service involved no net protocol conversion, and was therefore not enhanced, because "AT & T does not offer these customers a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information." *Id.* at 7465, 2004 WL 856557; *see also, Id.* at 7468, 2004 WL 856557 ("AT & T merely uses the Internet as a transmission medium without harnessing the Internet's broader capabilities."). The FCC summarized its ruling by noting:

> [W]e clarify that AT & T's specific service is subject to interstate access charges. End users place calls using the same method, 1+ dialing, that they use for calls on AT & T's circuit-switched long-distance network. Customer's of AT & T's specific service receive no enhanced functionality by using the service. AT & T obtains the same circuit-switched interstate access for its specific service as obtained by other interexchange carriers, and, therefore, AT & T's specific service imposes the same burdens on the local exchange as do circuit-switched interexchange calls. It is reasonable that AT & T pay

the same interstate access charges as other interexchange carriers for the same termination of calls over the PSTN, pending resolution of these issues in the Intercarrier Compensation and IP–Enabled Services rulemaking proceedings.

*Id.* at 7466–67, 2004 WL 856557. Here, Frontier contends that Datanet's telephone service falls under the *AT & T* decision, since it is essentially "1+" voice calling, with no enhanced functionalities and no net protocol conversion. Frontier Opposition Memo of Law [# 13], pp. 11–12; *see also,* Sayre Affidavit [# 14], ¶ 6 ("There are no enhanced functionalities, and USA Datanet's use of internet protocol to transmit the call is only incident to its own private network, and does not result in any net protocol conversion to its customers.").[2] As for defendant's 12(b)(6) motion, Frontier further contends that it's complaint adequately states a claim that Datanet constructively ordered Frontier's services.

Datanet maintains, however, that the *AT & T* decision does not apply to its phone service, since Datanet's service does not squarely fall within the three criteria set forth in the *AT & T* decision. For example, Datanet contends that its customers do not use true "1+" calling, but instead use a different type of dialing that involves dialing a seven-digit local number, entering a PIN number, and then dialing the actual number to be called.

---

**2.** Frontier also urges the Court to follow a 2002 ruling by the New York State Public Service Commission, which found that Datanet was required to pay access charges to Frontier. *See, Frontier Telephone of Rochester v. US DataNet Corp.,* N.Y.P.S.C., 2002 WL 31630846 (May 31, 2002). However, the Court declines to do so for two reasons. First, it is unclear whether the case is on point, since the dispute in that case was over intrastate, not interstate, access charges, and

moreover, the PSC based its ruling in part on a finding that Datanet was not providing an enhanced service, while Datanet contends that the service at issue here is enhanced. Moreover, it appears that the ruling by the New York State Public Service Commission is preempted. *See, Vonage Holdings Corp. v. Ney York State Public Service Com'n,* No. 04 Civ. 4306(DFE), 2004 WL 3398572 at *1 (S.D.N.Y. July 16, 2004).

Counsel for the parties appeared before the undersigned on July 21, 2005 for oral argument of the motion. The Court has thoroughly considered the parties' submissions and the arguments of counsel.

## ANALYSIS

■ Datanet contends that the Court should dismiss the complaint pursuant to the doctrine of primary jurisdiction. The Court declines to dismiss the action, but agrees that the doctrine of primary jurisdiction applies.

> The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight. Specifically, courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency. No fixed formula has been established for determining whether an agency has primary jurisdiction.

*National Communications Ass'n, Inc. v. American Tel. and Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir.1995) (citations and internal quotation marks omitted). However, courts generally consider the following four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*Id.* at 222. Additionally, "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 223.

■ As to the first two factors set forth above, the Court finds that the question at issue in this case involves technical and policy considerations that are particularly within the FCC's area of expertise and that are within its discretion. For example, the parties dispute whether or not Datanet's service provides "enhanced functionality"—an issue of obvious importance in this case, in light of the *AT & T* ruling discussed above. The FCC differentiates between "basic" service and "enhanced" service as follows:

> "basic" service is a service offering transmission capacity for the delivery of information without net change in form or content. . . . . By contrast, an "enhanced" service contains a basic service component but also employs computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information; provide the subscriber additional, different, or restructured information; or involve subscriber interaction with stored information.

*In the Matter of IP–Enabled Services*, WC Docket No. 04–36, Notice of Proposed Rulemaking, FCC 04–28, 2004 WL 439260, 19 F.C.C.R. 4863, 4879–80 (F.C.C. March 10, 2004). Enhanced services include services such as "voicemail, electronic mail, facsimile store-and-forward, interactive voice response, protocol processing, gateway, and audiotext information services." *Id.* at 4881, n. 94, 2004 WL 439260 (*Citing* 47 C.F.R. § 64.702(a)). On the other hand, the FCC, for policy reasons, has declined to regard as enhanced some services that arguably fit within this definition. *See,* John T. Nakahata, "Regulating Information Platforms: The Challenge of Rewriting Communications Regulation

From The Bottom Up," 1 J. Telecomm. & High Tech. L 95, 108 n. 52 (2002) (Noting that the FCC has classified services such as "speed dialing, call forwarding, computer-provided directory assistance, call monitoring, caller ID, call tracing, call blocking, call return, repeat dialing and call tracking" as "adjunct-to-basic" service.). As to whether or not Datanet's VoIP telephone service provides "enhanced functionality,"[3] the Court believes that this inquiry involves technical and policy considerations that are particularly within the expertise of the FCC. *See, Richard S. Whitt*, "A Horizontal Leap Forward: Formulating a New Communications Public Policy Framework Based on the Network Layers Model,", 56 Fed. Comm. L.J. 587, 652 (May 2004) ("[I]t is obvious from continuing debates over the proper classification of broadband and VoIP services that the purported "bright line" [between basic and enhanced services] that once separated these two classes of service increasingly is becoming blurred and subject to confusion.").

As for the third factor, there is clearly a substantial risk of inconsistent rulings here, since the Court cannot say how the FCC will address the issues before it. Although the FCC's ruling in the *AT & T* decision is very close to being dispositive in this case, the parties agree that it is not entirely on point. Most significantly,

Frontier agrees that Datanet's customers use a different dialing method than that discussed in the *AT & T* decision. Although Frontier contends that the difference is insignificant, the FCC expressly and repeatedly stated that its decision in the *AT & T* case pertained to IP phone service that involved "1+" dialing. On the other hand, to access its long distance network, Datanet's customers must "dial a local 7–digit number, wait for a second dial tone, input a PIN if the system does not recognize the user's Caller ID information, and dial the called number." Sayre Aff. [# 14], ¶ 6. Frontier states that, once Datanet's customers dial the initial 7–digit number and then input the PIN number, "from *that* point, the call is no different from any other "1+" voice call." *Id.* (emphasis added). The Court suspects that the FCC will ultimately agree with that argument, however, the fact remains that Datanet's dialing system is different from AT & T's.[4] As mentioned earlier, there is also the possibility of inconsistent rulings as to whether or not Datanet's service provides "enhanced functionality," within the meaning of the *AT & T* decision.

As for the fourth factor, whether a prior application has been made to the FCC, it is undisputed that the FCC has been seeking comments on these very issues since March 2004, and intends to issue a comprehensive set of rules concerning VoIP,

---

3. *See,* Kathleen Q. Abernathy [FCC Commissioner], "Overview of the Road to Convergence: New Realities Collide With Old Rules," 12 CommLaw Conspectus 133, 133("VoIP allows anyone with a broadband connection to enjoy a full suite of voice services, *often with greatly enhanced function a lities* and at a lower cost than traditional circuit-switched telephony.") (Emphasis added); Cherie R. Kiser, et al., "Regulatory Considerations For Cable–Provided Voice Over Internet Protocol Services," 819 PLI/Pat 341, 347 (2005 Practicing Law Institute) ("Over the past year, service providers and equipment vendors have focused their attention on

developing VoIP services and products that can provide consumers innovative voice offerings that include local, long distance, and international calling, *as well as many enhanced applications that are integrated with the voice application.*") (Emphasis added).

4. The Court has little doubt that Datanet will ultimately be required to compensate Frontier in some way. Regardless of how its service is classified, Datanet directly or indirectly benefits from the PSTN. And as discussed above, the FCC obviously intends to require those who use the PSTN to pay for the privilege.

including ones pertaining to carrier compensation. *See,* "Notice of Proposed Rulemaking," 19 F.C.C.R. at 4867–68, 2004 WL 439260 ("[T]his Notice asks broad questions covering a wide range of services and applications, and a wide assortment of regulatory requirements and benefits, to ensure the development of a full and complete record upon which we can arrive at sound legal and policy conclusions regarding whether and how to differentiate between IP-enabled services and traditional voice legacy services, and how to differentiate among IP-enabled services themselves."). Moreover, the FCC is particularly concerned with the issue of whether, and to what extent, VoIP providers should have to pay access charges. Additionally, the *VarTec* matter that is now pending before the FCC also raises an issue that is almost identical to the one being raised in the instant case.[5]

Finally, the Court has weighed "the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." In that regard, it is uncertain how long it will take the FCC to address this issue. Some analysts do not expect the FCC to issue a decision in 2005. *See,* "Level 3 Withdraws Access Charge Petition," Communications Daily, 2005 WLNR 4532580 (Mar. 23, 2005) ("Legg Mason said the FCC is likely to deal with the [issue of VoIP access charges] in the broader context of the intercarrier compensation proceeding, not expected to reach completion before year's end."). Nonetheless, the FCC has been actively considering the issue for more than a year, and it appears that a decision will be forthcoming in a matter of months, as opposed to years. In any event, it does not appear that some additional delay will harm Fron-

tier, since Frontier is only now pursuing claims that date back to 1999. Accordingly, based upon all of the factors discussed above, the Court finds that it would be prudent to stay the instant case until such time as the FCC resolves the issue of whether or not VoIP providers such as Datanet are liable for access charges.

## CONCLUSION

Defendant's motion to dismiss [# 5] is DENIED. However, the Court will stay the subject action pending a determination by the FCC regarding the applicability of access charges to VoIP providers such as defendant.

SO ORDERED.

---

**5.** The issue is not identical, since *Vartec* involves terminating access service, as opposed to originating access service.